THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| PEAK COMMUNICATIONS, INC., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> BILLING CONCEPTS, INC., § <br> § <br> Defendant. § | Case No. 5:23-CV-328 |

**PLAINTIFF'S APPLICATION TO CONFIRM ARBITRATION AWARD**

Plaintiff Peak Communications, Inc. ("Plaintiff" or "Peak"), asks the Court to confirm the domestic arbitration award against Defendant Billing Concepts, Inc. ("Defendant" or "BCI"), and would respectfully show the following:

**I. INTRODUCTION**

1. This is a dispute arising out of the parties' *Invoice Ready Billing and Information Management Services Agreement* dated June 26, 2000 (the "Services Agreement"). (Perry Decl., ¶ 5; Perry Decl. Exhibit A [Statement of Claim Ex. 1]).

2. Consistent with the terms of the Services Agreement, Peak initiated arbitration pursuant to a Demand for Arbitration and Statement of Claim against BCI on September 20, 2022, asserting breach of contract and accounting claims against BCI. (Perry Decl., ¶ 6; Perry Decl. Exhibit A [Demand and Statement of Claim]).

3. The arbitration was administered by the American Arbitration Association ("AAA"). (Perry Decl., ¶ 7).

4. A panel of three arbitrators was duly appointed in November 2022. (Perry Decl., ¶ 8; Perry Decl. Exhibit C [General Arbitrator Oath Forms]).

5. On January 6, 2023, Peak filed a First Amended Statement of Claim with Exhibits 1 and 2, which was the live Statement of Claim at the time of the final hearing. (Perry Decl., ¶ 9; Perry Decl. Exhibit B [First Amended Statement of Claim]).

6. On January 26, 2023, the final hearing was held via Zoom and deemed to have been held in San Antonio, Texas. (Perry Decl., ¶ 10; Perry Decl. Exhibit D [Final Award]).

7. Despite due notice, BCI did not appear at any time during the arbitration or the final hearing to defend itself. (Perry Decl., ¶ 10; Perry Decl. Exhibit D [Final Award]).

8. On February 22, 2023, the arbitrators issued a Final Award in the amount of $1,269,346.25 plus post-judgment (post-award) interest to accrue at the rate of 7.5% per annum compounded annually from the date of the award. (Perry Decl., ¶ 11; Perry Decl. Exhibit D [Final Award]).

## II. PARTIES, JURISDICTION & VENUE

9. Plaintiff Peak is a California corporation and a citizen of the state of California for the purposes of diversity jurisdiction. (Perry Decl., ¶ 12).

10. Defendant BCI is a dissolved Delaware corporation and a party to the Services Agreement. BCI's principal place of business (corporate headquarters) was located in San Antonio, Texas prior to its dissolution, and BCI was registered as a foreign corporation authorized to do business in Texas. BCI is a citizen of Delaware and Texas for purposes of diversity jurisdiction. (Perry Decl., ¶ 13).

11. BCI may be served with process on the Delaware Secretary of State's office pursuant to 8 Delaware Code §§ 278 and 321 as a dissolved Delaware corporation. Corporation Service Company is still shown as BCI's active registered agent in Delaware and Texas. (Perry Decl., ¶ 14).

12. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) over all claims in this

action because (a) Peak is not a citizen of any State in which BCI is a citizen, and (b) the matter in controversy exceeds $75,000, exclusive of interest and costs.

13. This Court has personal jurisdiction over BCI, because BCI was domiciled in Texas, did business in Texas, and/or purposefully availed itself of the laws of the State of Texas.

14. Section 20 of the Services Agreement also provides that except for the requirement to arbitrate disputes before the AAA, the federal or state courts located in Bexar County, Texas shall have exclusive venue and jurisdiction over any court proceedings arising under or by virtue of the Services Agreement. (Perry Decl., ¶ 15; Perry Decl. Exhibit B [First Amended Statement of Claim Ex. 1 § 20]).

15. Venue is proper in this District and Division under 9 U.S.C. § 9, as the arbitration award at issue in this matter was made in this District and pursuant to the exclusive venue clause of Section 20 of the Services Agreement. (Perry Decl., ¶ 16; Perry Decl. Exhibit B [First Amended Statement of Claim Ex. 1 § 20]).

### III. <u>SUPPORTING EVIDENCE</u>

16. Peak presents the following evidence in support of this Application: Declaration of Shawn M. Perry and the following Exhibits attached thereto:

| **Exhibit A** | Plaintiff's Original Demand for Arbitration and Statement of Claim and Exhibit 1 attached thereto. |
|---|---|
| **Exhibit B** | Plaintiff's First Amended Statement of Claim and Exhibits 1 and 2 attached thereto. |
| **Exhibit C** | Arbitrator Oath Forms |
| **Exhibit D** | Final Award |

## IV. FACTUAL AND PROCEDURAL BACKGROUND

17. Peak is a regulated Interexchange Carrier ("IXC") who is authorized to provide long distance telephone service to residential and business customers. Peak provides presubscribed one-plus (1+) long distance phone services to customers in multiple states throughout the country. (Perry Decl., ¶ 18; Perry Decl. Exhibit B [First Amended Statement of Claim at ¶ 9]).

18. As an IXC, Peak is subject to regulation by the Federal Communications Commission ("FCC") and regulatory authorities in the states in which it provides long distance services. (Perry Decl., ¶ 19; Perry Decl. Exhibit B [First Amended Statement of Claim at ¶ 10]).

19. Peak does not possess the embedded infrastructure, networks, or billing platforms to provide long distance service. Instead, it purchases and resells its telecommunications services, and is known as a "Reseller." (Perry Decl., ¶ 20; Perry Decl. Exhibit B [First Amended Statement of Claim at ¶ 11]).

20. Defendant BCI is a subsidiary of Billing Services Group Limited, a Bermuda holding company that operated through subsidiaries, including BCI. (Perry Decl., ¶ 21; Perry Decl. Exhibit B [First Amended Statement of Claim at ¶ 3]).

21. BCI provided the service of aggregating third-party telecommunications charges for purposes of facilitating billing for Peak and other Resellers. Companies like BCI are referred to as "aggregators" or "clearinghouses" because they aggregate and provide billings services to a multitude of Resellers like Peak. (Perry Decl., ¶ 22; Perry Decl. Exhibit B [First Amended Statement of Claim at ¶ 15]).

22. In 2019, Peak and BCI terminated the Services Agreement. (Perry Decl., ¶ 23; Perry Decl. Exhibit B [First Amended Statement of Claim at ¶¶ 90, 98]).

23. This case arose because BCI failed to remit over $933,000 that was owed to Peak under

the Services Agreement.   (Perry Decl., ¶ 24; Perry Decl. Exhibit B [First Amended Statement of Claim at ¶ 106]).

24. Peak's demands for payment of the money it was owed by BCI were ignored. (Perry Decl., ¶ 25; Perry Decl. Exhibit B [First Amended Statement of Claim at ¶ 8]).

25. Peak invoked the pre-arbitration dispute resolution requirements of the Service Agreement and was ignored by BCI.   (Perry Decl., ¶ 26; Perry Decl. Exhibit B [First Amended Statement of Claim at ¶ 8]).

26. On September 20, 2022, Peak initiated arbitration under the dispute resolution procedures in Section 26(c) of the Services Agreement. Plaintiff asserted a breach of contract claim and an accounting claim against BCI.  (Perry Decl., ¶ 27; Perry Decl. Exhibit A [Demand for Arbitration and Statement of Claim]).

27. A panel of three arbitrators were duly appointed.  (Perry Decl., ¶ 28; Exhibit C [General Arbitrator Oath Forms]).

28. A final arbitration hearing took place before a panel of three arbitrators on January 26, 2023 via Zoom. Peak was represented by counsel. Peak presented witnesses who offered sworn testimony and all exhibits that were marked and offered to the arbitrator for consideration were admitted.  (Perry Decl., ¶ 29; Exhibit D [Final Award]).

29. On January 30, 2023, a post-hearing application for attorneys' fees and costs was filed with the AAA.  (Perry Decl., ¶ 30).

30. On February 22, 2023, the arbitrators issued a Final Award finding in favor of Peak, awarding Peak $932,773.29 in actual damages, plus attorneys' fees, expenses, pre- and post-judgment interest, and costs as follows:

| Principal Amount of Compensatory Damages | $932,773.29 |
|---|---|
| Prejudgment (Pre-award) Interest | $240,458.89 |
| Attorneys' fees and costs | $60,482.66 |
| AAA administrative fees | $12,325.00 |
| Arbitrator compensation and expenses | $23,306.41 |
| **Total Award** | **$1,269,346.25** |

(Perry Decl., ¶ 31; Exhibit D [Final Award] at p. 2-3 and p. 3, ¶ 4).

31. The Panel also awarded post-judgment interest at the rate of 7.5% per annum compounded annually from February 22, 2023 (the date of the award). (Perry Decl., ¶ 32; Exhibit D [Final Award] at p. 3, ¶ 5).

## V. ARGUMENT

32. The parties agreed that any dispute, disagreements, claims or controversies arising out of or related to the Services Agreement were subject to the dispute resolution procedures of Section 26 of the Services Agreement. If the parties were unable to resolve the dispute with pre-arbitration procedures set forth in Sections 26(a) and (b) of the Services Agreement, arbitration was mandated by Section 26(c) before a Panel of three arbitrators administered under the Commercial Arbitration Rules of the AAA. (Perry Decl., ¶ 33; Perry Decl. Exhibit B [First Amended Statement of Claim Ex. 1 at § 26]).

33. The arbitration was conducted pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. (Perry Decl., ¶ 34; Exhibit D [Final Award] at p. 1 and n.3).

34. Although the Services Agreement did not reference the FAA, since the parties were involved in the delivery and billing of interstate and intrastate long distance services and the parties were from different states, the FAA is plainly applicable because of the interstate nature of the parties' relationship. (Perry Decl., ¶ 35).

35. This Application has been timely filed because it was filed within one year of the award as

required by 9 U.S.C. § 9.

36. On a timely filed application to confirm an arbitration award, the Court must confirm an arbitration award unless there are grounds to vacate, modify, or correct the award. 9 U.S.C. § 9; *Hall St. Assocs., LLC. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) ("There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases except when one of the 'prescribed' exceptions applies."); *Quezada v. Bechtel OG & C Constr., Servs., Inc.*, 946 F.3d 837, 840 (5th Cir. 2020).

37. The scope of this Court's review is severely limited. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-38 (1987); *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004). Section 10 of the FAA provides that a district court may only vacate an arbitration award under the following circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evidence of partiality or corruption by the arbitrator;

(3) where the arbitrator was guilty of misconduct by refusing to postpone the hearing, by refusing to hear evidence pertinent and material to the controversy, or by engaging in any other misbehavior that prejudiced the rights of any party; or

(4) where the arbitrator exceeded his powers or so imperfectly executed them that a mutual, final, and definite award was not made.

9 U.S.C. § 10(a); see *Hall St.*, 552 U.S. at 578 (observing that the grounds enumerated in FAA §§ 10 and 11 are the only circumstances under which a court may grant vacatur or modification under the FAA); *accord Citigroup Glob. Markets, Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (overruling previous non-statutory grounds supporting vacatur of an arbitration award).

38. The party seeking to vacate, modify, or correct an arbitration award has a heavy burden of proof and the Court must resolve all doubts in favor of confirming the award. *Brabham*, 376 F.3d

at 385 (explaining that the court "must remain exceedingly deferential to arbitration").

39. Likewise, the scope of the Court's review does not include an examination of the merits of the parties' claims; the Court must defer to the reasonable determination of the arbitrator. *See*, *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 693-94 (2010) ("The four grounds for vacatur codified in § 10(a) restate the longstanding rule that, "[i]f [an arbitration] award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court ... will not set [the award] aside for error, either in law or fact.") (citation and internal quotations omitted); *Resolution Performance Prod., LLC v. Paper Allied Indus. Chem. & Energy Workers Int'l Union, Local 4-1201*, 480 F.3d 760, 764-65 (5th Cir. 2007) (explaining that a court must confirm an arbitration award if the arbitrator is "arguably construing or applying the contract and acting within the scope of his authority"). As a result, an arbitration award is rarely vacated. See *McShane v. PilePro Steel, LP*, No. 1:16-CV-964-LY, 2017 WL 1399703, at *4 (W.D. Tex. Apr. 19, 2017) (explaining that vacating an arbitration award is "extremely difficult, and is something rarely found by a court"); *See also*, *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (noting that the standard for vacatur is so high that "serious error" or "improvident, even silly, factfinding" will not support vacatur).

40. The Final Award in this case must be confirmed. This case does not involve any of the rare instances in which vacatur is permitted. To the contrary, (i) BCI was provided with multiple notices of the proceeding, including service on its registered agents in Delaware and Texas, the Delaware Secretary of State's office, delivery by a process server to the home of its President, to his new office, delivery by Priority Mail with confirmations of delivery, and via email. BCI nonetheless ignored the arbitration and chose not to appear and defend itself. (Perry Decl., ¶ 36; Exhibit D [Final Award] at pp. 2-3).

41. Because the AAA Commercial Rules do not have an analogue to default judgments in Court proceedings, Peak presented its case in full at the final hearing as to both liability and damages. The arbitrators had no conflicts of interest and conducted a full and fair hearing in which all testimony and exhibits offered by Peak were admitted. All post hearing submissions were served on BCI as were the pre-hearing arbitration demand, statement of claim, and other submissions. (Perry Decl., ¶ 37; Exhibit D [Final Award] at pp. 1-3).

42. The arbitrators issued a reasonable award rationally based on the evidence and Service Agreement. There is no evidence of fraud, corruption, partiality, or other similar factors that would justify vacating the Final Award in this case. (Perry Decl., ¶ 38; Exhibit D [Final Award] at pp. 1-3).

43. As set forth in the Final Award, the arbitrators unambiguously found in Peak's favor in all respects. (Perry Decl., ¶ 39; Exhibit D [Final Award] at pp. 1-3).

44. Section 26(c) of the Services Agreement provides that the prevailing in any arbitration would recover all reasonable and necessary attorneys' fees, costs and expenses incurred in connection with the arbitration. (Perry Decl., ¶ 40; Perry Decl. Exhibit B [First Amended Statement of Claim Ex. 1 at § 26(c)]).

45. Consistent with the Services Agreement, the arbitrators awarded Peak (as the prevailing party), all expenses incurred in connection with the dispute, including attorneys' fees and costs. (Perry Decl., ¶ 41; Exhibit D [Final Award] at pp. 1-3). Thus, Peak is entitled to entry of judgment consistent with the Final Award.

46. Because there are no grounds for modifying, correcting, or vacating the award, the Court must confirm the arbitration award in this case. 9 U.S.C. §9; *Hall St.*, 552 U.S. at 578.

## VI. CONCLUSION

Plaintiff respectfully asks the Court to confirm the arbitration award in all respects, enter a judgment in accordance with the award, and grant Plaintiff any and all relief, in law or in equity, to which it may be justly entitled.

Dated: March 16, 2023

>Respectfully submitted,
>
>/s/ Scott T. Staha
>Scott T. Staha
>Texas Bar No. 00785032
>(admitted pro hac vice)
>HERMANN & HERMANN, PLLC
>The Herrman Building
>1201 Third Street
>Corpus Christi, Texas 78404
>(361) 883-7705
>Email:  litigation@herrmanandherrman.com
>
>/s/ Shawn M. Perry
>Shawn M. Perry
>pro hac vice application pending
>Minn. Bar No. 185000
>Perry & Perry, PLLP
>West End Plaza, Suite 336
>1660 Highway 100 South
>Minneapolis, MN  55416
>952.546.3845 tel.
>952.546.3855 fax
>Email: shawn.perry@pppllp.com
>
>***Attorneys for Plaintiff***